IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLORIA CARR and DELOREAN MCKINNEY as Co-Special Administrators of the Estate of DARRIN E. HANNA, deceased, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 11 CV 8836 |
| v. | ) ) | Magistrate Arlander Keys |
| CITY OF NORTH CHICAGO *et al*., | ) ) | |
| Defendants. | ) | |

**MUNICIPAL DEFENDANTS' MOTION TO BIFURCATE PLAINTIFFS' CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THE § 1983 CLAIMS AGAINST THEM**

Plaintiffs, Co-Administrators of the Estate of Darrin Hanna ("Hanna"), deceased, filed this action against the City of North Chicago (the "City"), its mayor, Leon Rockingham, Jr. ("Mayor Rockingham"), former police chief Michael Newsome ("Chief Newsome"), and seven of its police officers (Officers Borzick, Grayer, Keske, Yost, Strong, Geryol, and Cecala (collectively, "Defendant Officers")). Plaintiffs allege that when Defendant Officers went to Hanna's home in response to a domestic battery call, they unjustifiably beat and tasered him, causing his death. Plaintiffs bring federal claims of excessive force, failure to intervene, and conspiracy, and several state law claims against Defendant Officers. Against the City, Mayor Rockingham, and Chief Newsome (collectively, "Municipal Defendants"), Plaintiffs bring, in addition to several state law claims, claims under 42 U.S.C. §1983, alleging that their policy, practice and custom of perpetuating the use of excessive force by North Chicago police officers, and their failure to properly hire, train and supervise the officers caused the alleged constitutional

1

violations. See Counts VIII and IX of Plaintiffs' Third Amended Complaint, attached as Exhibit A.

The City, Mayor Rockingham, and Chief Newsome now move this court under Federal Rule of Civil Procedure 42(b) to (1) bifurcate the Section 1983 policy claims against them (*Monell*[1] claim in Count VIII and inadequate hiring, training, and supervision claim in Count IX) from the claims against Defendant Officers, and (2) stay discovery and trial on the Section 1983 claims against the Municipal Defendants until resolution of all claims against Defendant Officers.

## PLAINTIFFS' ALLEGATIONS ABOUT UNDERLYING INCIDENT

Plaintiffs allege that on November 6, 2011, Defendant Officers went to Hanna's home in response to a domestic battery call and forcibly entered it. Exhibit A (Third Amended Complaint), ¶¶ 11-12. Hanna was not armed. *Id.,* ¶ 13. After Defendant Officers entered the home, Hanna's girlfriend safely came out. *Id.,* ¶ 14. Then, Defendant Officers repeatedly beat Hanna all over his body before and after he was handcuffed. *Id.,* ¶ 15. Defendant Officers also repeatedly tasered Hanna. *Id.,* ¶ 16. Hanna pleaded with Defendant Officers to stop beating and tasering him, but to no avail. *Id.,* ¶ 17. One week later, Hanna died in a hospital from injuries he sustained at the hands of Defendant Officers. *Id.,* ¶18. Plaintiffs allege that the force used by Defendant Officers on Hanna was unjustified, excessive, and in violation of his constitutional rights. *Id.,* ¶¶ 19, 21-22. Plaintiffs also allege that each Defendant Officer could have, but failed, to stop the other from using excessive force against Hanna. *Id.,* ¶ 43.

## ARGUMENT

Rule 42(b) allows district courts to separate the trial of any issues or claims if separation (or bifurcation) is warranted "[f]or convenience, to avoid prejudice, or to expedite and

---
[1] *Monell v. New York City Dep't of Soc. Serv's.,* 436 U.S. 658 (1978)

economize[.]" Fed. R. Civ. P. 42(b). Of the criteria set forth in Rule 42(b), only one needs to be met for a court to order bifurcation. *See, e.g., Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994). District courts have broad discretion in ordering the bifurcation of claims, as part of their inherent power to control their docket. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). The Seventh Circuit has explicitly endorsed bifurcation as a means to serve the pragmatic values embodied by Rule 42(b) and avoid "the waste of valuable time and resources of the court." *See, e.g.*, *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). (holding that the district court did not abuse its "considerable discretion" in bifurcating *Monell* claims from other claims presented in the case).

Here, as explained below, bifurcation of the Section 1983 claims against the Municipal Defendants from the other claims is warranted because more than one of Rule 42(b)'s criteria is satisfied. Bifurcation will promote expedition and economy and further convenience. Plaintiffs' claims against the Municipal Defendants rest on theories – failure to discipline (Count VIII) and inadequate hiring, training, and supervision (Count IX) - that are wholly contingent on Defendant Officers' conduct. Thus, if Plaintiffs fail to establish that Defendant Officers violated Hanna's constitutional rights, their claims against the Municipal Defendants cannot succeed as a matter of law. So, by staying litigation on the claims against the Municipal Defendants until resolution of all claims against Defendant Officers, the parties will avoid potentially unnecessary and unduly burdensome discovery and litigation costs. If, on the other hand, Plaintiffs establish that any Defendant Officer violated Hanna's constitutional rights, the City offers to stipulate to an entry of judgment against it, relieving Plaintiffs of the burden of having to spend money and time to prove their claims to establish municipal liability. Importantly, bifurcation will also avoid undue prejudice to Defendant Officers.

## A. Plaintiffs cannot establish their claims against Municipal Defendants without first showing that a Defendant Officer violated Hanna's constitutional rights.

For Section 1983 liability to attach to a municipality, a plaintiff must establish that an unconstitutional municipal policy caused the alleged constitutional violation committed by a municipal employee. *Monell*, 436 U.S. at 690. So, where, as here, a plaintiff sues a municipality based on the actions of its employees, the plaintiff cannot succeed on the *Monell* claim without first showing that an individual defendant violated his constitutional rights. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Under certain circumstances, however, such as when the implementation of a municipal policy results in injuries, a municipality can be held liable, even if the officers are not individually culpable (because they successfully assert a defense). *Thomas v. Cook County Sheriff's Dep't.*, 604 F.3d 293, 305 (7th Cir. 2010). In other words, "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Id*.

To determine whether a municipality's liability depends on the actions of its officers, the courts apply three factors: (1) the nature of the constitutional violation that the plaintiff alleges; (2) the theory of municipal liability that supports the *Monell* claim; and (3) the defenses that the individual defendants have asserted. *Id.* at 305. Here, applying the three *Thomas* factors does not impede granting this motion because the claims against the City, Mayor Rockingham, and Chief Newsome are wholly contingent on the conduct of Defendant Officers.

As to the first *Thomas* factor – nature of constitutional violation - Plaintiffs assert three claims against Defendant Officers under Section 1983 - excessive force, failure to intervene, and conspiracy. Specifically, Plaintiffs allege that the beating and tasering Hanna suffered at the hands of Defendant Officers amounted to excessive force. Ex. A (Third Amended Complaint), ¶¶ 19, 21-22, 25-30, 45. Plaintiffs also allege that each Defendant Officer could have, but failed, to

intervene and stop the other from using excessive force against Hanna. *Id.,* ¶¶ 43, 44. Finally, Plaintiffs allege that Defendant Officers acted in concert and agreed to use excessive force against Hanna and file false reports about the same. *Id.*, ¶¶ 63-66.

As to the second *Thomas* factor –theory of municipal liability - Plaintiffs assert two theories in support of their claims against Municipal Defendants – failure to discipline or take corrective action against officers, and the inadequate hiring, supervision, and training of police officers. Specifically, Plaintiffs allege that the City, Mayor Rockingham, and Chief Newsome "had actual knowledge since at least 2005 of a pattern and practice among the City's police officers to use Tasers and/or excessive force during detention and/or arrest of accused individuals." Ex. A (Third Amended Complaint), ¶ 20. Plaintiffs contend that the City, Mayor Rockingham, and Chief Newsome acquiesced, promoted, perpetuated, tolerated and fostered the pattern of excessive force by refusing and failing to take corrective actions against the police officers and continuing to allow them to engage in such misconduct. *See id.*, ¶¶ 20, 70. Plaintiffs further contend that the City, Mayor Rockingham, and Chief Newsome's "acceptance of the pattern and practice" among the City's police officers to use Tasers and/or excessive force during the arrest and/or detention of accused individuals "created a practice, although not written or express municipal policy, so widespread, permanent and settled that it constituted a custom or usage" within the City's police force. *Id.*, ¶ 71. This policy, practice or custom allegedly caused the violation of Hanna's civil rights. *Id.*, ¶ 72. Plaintiffs also allege that the City, Mayor Rockingham, and Chief Newsome failed to properly hire, train, and supervise the City's police officers; and failed to implement policies and procedures to prevent citizens from being victims of excessive force. *Id.*, ¶ 78.

It is clear from the facts that support Plaintiffs' excessive force, failure to intervene, and conspiracy claims against Defendant Officers and the theories supporting the claims against Municipal Defendants that the claims against Municipal Defendants are wholly dependent on the claims against Defendant Officers. As an initial matter, Plaintiffs cannot maintain their failure to intervene and conspiracy claims without first proving that Defendant Officers used excessive force against Hanna. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (proving excessive force is an element of the failure to intervene claim); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) (explaining "the absence of any underlying violation of plaintiff's rights precludes the possibility of plaintiff succeeding on conspiracy claim").

In an excessive force claim, the fact-finder must determine whether Defendant Officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir.2011). The "objective reasonableness" standard "requires that a fact finder analyze whether the officer's actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight." *Common*, 661 F.3d at 943. Here, Plaintiffs allege that Defendant Officers used excessive force against him because the City, Mayor Rockingham, and Chief Newsome acquiesced and promoted a pattern of the use of excessive force by their police officers and failed to implement policies and procedures to prevent citizens from being victims of excessive force.

It is clear that Plaintiff's claims against County Dependents under the theories of failure to discipline, and inadequate hiring, supervision, and training, are not independent of the excessive force claim against Defendant Officers. In other words, this case is like *Heller*, 475

6

U.S. at 799, in which individual officers' specific actions resulted in injury, and unlike *Thomas*, 604 F.3d at 305, where official policies resulted in injury without any action by individual officers. See *Tanner v. City of Waukegan*, 10 C 1645, 2011 WL 686867 (N.D. Ill. Feb. 16, 2011) (Keys, M.J.). Like Plaintiffs here, the plaintiff in *Heller* alleged that officers used excessive force because the City's policies authorized the use of excessive force. The Court held in *Heller* that the plaintiff could not prove the claim against the City without proving that excessive force was used in the first place. On the other hand, in contrast to Plaintiffs here, the plaintiff in *Thomas* alleged that jail employees were deliberately indifferent to his serious medical needs, in violation of the Fourteenth Amendment. Plaintiff alleged that the County had policies that led to chronic understaffing at the jail that prevented the jail employees from taking appropriate action. Unlike the 'objectively reasonable' standard of the Fourth Amendment applied to excessive force claims, under which the subjective intent of the officer is immaterial, the 'deliberate indifference' standard under the Fourteenth Amendment applied to denial of medical care claims requires showing subjective intent on part of the individual defendant. Accordingly, the Seventh Circuit noted in *Thomas* that a jury could find that the jail employees did not intentionally deny him medical care, but simply could not respond adequately to plaintiff's medical needs because of well-documented breakdown in jail policy. In that case, the court concluded, a jury could find that the jail's policies caused the harm, even if the employees were not individually culpable.

In this case, however, individual liability is inextricably linked to the underlying constitutional violation. Unlike in *Thomas*, where the jail employees "could have relied on official practices to show the absence of the requisite intent, it is difficult to see how the officers in this case could point to the City's policies to do likewise when their subjective state of mind does not govern their liability." See *Tanner*, 2011 WL 686867. So, if a court or jury finds that

Defendant Officers' use of force was "objectively reasonable," then it is immaterial whether the City, Mayor Rockingham, and Chief Newsome acquiesced and promoted a pattern of the use of excessive force by their police officers or failed to implement policies and procedures to prevent citizens from being victims of excessive force. In other words, a finding that Defendant Officers did not use excessive force in this case renders municipal policy on the use of excessive force by police officers or their hiring, training and supervision irrelevant and moots the issue of causation. *See Heller*, 475 U.S. at 799 ("If a person has suffered no constitutional violation at the hands of the individual officers, the fact that departmental regulations may have authorized the use of constitutionally excessive force is quite beside the point."); *see Sallenger v. City of Springfield*, 630 F.3d 499, 504-05 (7th Cir. 2010) (in a failure to train case "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee.").

Put another way, a finding that Defendant Officers' use of force against Hanna was "objectively reasonable," hence did not violate his constitutional rights, cannot square with a finding that the City's policy of perpetuating such use of force or the inadequate hiring, training, or supervising its officers caused Hanna's constitutional rights to be violated. Were a jury to make such contradictory findings, it would create an inconsistent verdict, in violation of *Heller*. *Cf. Thomas*, 604 F.3d at 305.

As to the third *Thomas* factor, Defendant Officers have asserted the defense of qualified immunity, in addition to defenses to state law claims not relevant to this motion. See Individual Defendants' Answer to Plaintiffs' Third Amended Complaint, attached as Exhibit B. But Defendant Officers' assertion of qualified immunity should not impede this court from bifurcation. If Plaintiffs' underlying allegations are true – that Defendant Officers repeatedly

8

beat and tasered an unarmed man for no justifiable reason, causing his death – they clearly state a claim for excessive force, and the right to be free from excessive force is clearly established. This court and other courts in this district have acknowledged that where, as here, the allegations, if true, amount to excessive force, the possibility of the individual defendant prevailing on qualified immunity is remote, and therefore no bar to bifurcation. See *Tanner,* 2011 WL 686867 (collecting cases).

In short, the order of proof in proving Plaintiffs' claims against Municipal Defendants favors separating and deferring discovery and trial into those claims until the issues raised by the claims against Defendant Officers are resolved.

**B.      Bifurcation best serves the interests of litigation and judicial economy.**

Rule 42(b) of the Federal Rules of Civil Procedure ("Federal Rules") allows the court to bifurcate claims if it "will be conducive to expedition and economy. . ." Rule 26(c)(1)(D) of the Federal Rules allows the court to limit discovery to avoid "undue burden or expense." And Rule 1 provides that the Federal Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Bifurcation "permits a bypass of discovery relating to the municipality's policies and practices, which . . . can add significant time, effort, and complications to the discovery process." *Medina v. City of Chicago*, 100 F. Supp.2d 893, 895 (N.D. Ill. 2000) (Kennelly, J.). As the Seventh Circuit recognized in *Treece*, the bifurcation of policy claims "avoided the needless costs and burdens of a second trial, as well as, but not limited to the waste of the valuable time and resources of the court . . ." 213 F.3d at 365.

In this case, Plaintiffs have served unduly burdensome and broad discovery requests to Municipal Defendants. Plaintiffs' interrogatories and document requests to the City are attached

to this motion as Exhibits C, D, and E. Typical of Plaintiffs' interrogatories directed to their claims against Municipal Defendants are the following:

> 4) Out of the 80 plus incidences over the last four (4) years where persons being brought into custody have needed hospital or medical attention as result of their apprehension, arrest, and/or detention, please state whether THE CITY OF NORTH CHICAGO has conducted any investigation into some or all of those instances. If the Answer is in the Affirmative, state the names of the cases subject to investigation, names and addresses of those involved in the investigations and the criteria used by THE CITY OF NORTH CHICAGO to determine which of those instances would be placed under investigations and name of the person who made the determination(s) to investigate.
>
> 10) Has the City of North Chicago been named as a defendant in a lawsuit arising from alleged 42 U.S.C § 1983 Actions or police brutality and or received any complaints of Excessive Force by North Chicago Police Officers in the Ten (10) years proceeding (sic) the filing of this lawsuit? If the answer is in the affirmative, please state the name of the plaintiff or complainant, the date of the incident, the Court and Court number (if applicable), and the disposition.

Exhibit C (Plaintiffs' First Set of Interrogatories to Defendant City of North Chicago).

Similarly, typical of Plaintiffs' requests for documents directed to their claims against Municipal Defendants are the following:

> 2. Any and all materials, orders, directives, reports, memoranda, scripts, rules, regulations, guidelines, issued by the City of North Chicago or any of its agencies including but not limited to its police department and its prosecuting attorney's office governing the use of force by an officer, de-escalation procedures, use of tasars (sic), use of minimal force necessary in the apprehension or detention of a subject, use of batons on a suspect, punching a suspect in handcuffs.
> 3. Any and all materials, orders, directives, reports, memoranda, script, rules, regulations, guidelines, summaries concerning the standards in effect on November 6, 2011 which were to be used in determining when the use of force on the part of a police officer is legal and justified, including but not limited to the following:
>     a. All such materials used in the training of police officers (course outlines, book, manuals, brochures, films, filmstrips, tape recordings, and other audio visual material, and so forth); and
>     b. All such materials issued at any time to active duty police officers (orders, memoranda, brochures, leaflets, scripts, and so forth.)
> 14. Any and all police manuals, special orders, command/operational memorandums, orders, and directives governing the operation of the North Chicago Police Department and its officers in effect on November 6, 2011.

10

15. Any and all City of North Chicago ordinances or statutes governing or pertaining to its police department in effect 2005 until present.
27. Please provide copies of all 88 complaints filed against the City of North Chicago Police department for excessive force. For each complaint, please provide a copy of the investigation file.
28. Please provide copies of the 87 use of force report forms from 5/2008-11/2001.
29. Please provide copies of any written memoranda, directives, reports, correspondence, documents, and any other materials associated with the implementation of the Transparent Complaint process referred to in the Memorandum of Understanding between the city of North Chicago and a Minority Group. Including but not limited to a copy of all complaints made from the year 2005 up to and including the present date.

Exhibit D (Plaintiffs' First Request for Production).

Responding to these broad and far-reaching discovery requests will involve sorting and sifting through voluminous records of the North Chicago police department, as well as delving into and reviewing the activity of the department with regard to systemic departmental policies and practices since 2005. Gathering this information will require a lot of time and resources. Further, Plaintiffs will inevitably take depositions of North Chicago officers, including Mayor Rockingham, and Chief Newsome regarding the policies and practices of the City. As is evident from Plaintiffs' claims and discovery requests, the discovery Plaintiffs seek with regard to their claims against Municipal Defendants – policies and practices on training, supervision and discipline, and details of past lawsuits and complaints – does not overlap with the discovery they seek or need to prove that Defendant Officers used excessive force against Hanna on November 6, 2011. *See Medina*, 100 F. Supp. 2d at 894 (stating that excessive force cases do not ordinarily involve inquiries into a police department's training and disciplinary procedures). So, protracted discovery on claims against Municipal Defendants will delay what is otherwise a case concerning a single encounter between Mr. Hanna and seven police officers at his home. Thus, bifurcating Plaintiffs' claims and deferring discovery on the claims against the Municipal

Defendants will allow Plaintiffs and Municipal Defendants to avoid potentially unnecessary and burdensome discovery and litigation costs should Plaintiffs fail to establish an underlying constitutional violation and thus, as a matter of law, be unable to prove their claims against Municipal Defendants. For this reason alone – and one reason suffices under Rule 42(b) – this court should grant this motion.

C.     **Bifurcation will help prevent undue prejudice to Defendant Officers.**

Rule 42(b) explicitly identifies avoidance of prejudice as grounds for bifurcation. If the claims against Municipal Defendants and Defendant Officers go to trial at the same time, Defendant Officers will likely suffer severe prejudice. As is clear from Plaintiffs' Third Amended Complaint and discovery requests, Plaintiffs intend to prove their claims against Municipal Defendants through the introduction of evidence of alleged systemic deficiencies in policies or procedures pertaining to hiring, training, supervising, and disciplining North Chicago police officers. In particular, Plaintiffs will seek to introduce evidence of complaints of alleged acts of police misconduct committed by non-party officers, at other places and times. Exhibit D (Plaintiffs' First Request for Production), ¶¶ 27-28. Plaintiffs will also seek to introduce evidence of the alleged non-implementation of policies and procedures set forth in the Memorandum of Understanding with the NAACP due to the number of excessive force complaints against North Chicago police officers. See Exhibit A (Third Amended Complaint), ¶¶ 77-78; Exhibit D (Plaintiffs' First Request for Production), at ¶¶ 29-31. On the other hand, the claims against Defendant Officers involve a single incident of allegedly excessive force against Plaintiff. Proof of the City's alleged systemic deficiencies in policies or procedures pertaining to hiring, training, supervising, and disciplining officers or proof of unrelated incidents and lawsuits has no bearing whatsoever on determining whether Defendant Officers' use of force was "objectively

reasonable in light of the facts and under the circumstances confronting the officer *at the time of the incident, without regard to the underlying motive or intent of the officer*." *Common*, 661 F.3d at 943 (emphasis added). Broader evidence of unrelated incidents of misconduct and the City's policies and practices for addressing officer misconduct will contaminate the jurors' minds in its consideration of the liability of Defendant Officers. So, a substantial risk exists that such evidence will be unfairly prejudicial to Defendant Officers in their attempts to defend themselves against Plaintiffs' claim. Thus, bifurcation of the claims here protects Defendant Officers from the possible prejudice caused by the introduction at trial of extensive and extraneous evidence of alleged systemic deficiencies in policies or procedures pertaining to hiring, training, supervising, and disciplining officers. *See Demouchette v. Sheriff of Cook County*, 09 C 6016, 2011 WL 679914, at *10 (N.D. Ill. Feb. 16, 2011) (Keys, M.J.) (concluding that on the facts before it, without bifurcation, "the individual defendants could face unusual difficulty in distinguishing their own acts that allegedly violated Plaintiff's constitutional rights from evidence that would be introduced to support claims against the County."); *Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815, at *3 (N.D. ILL. July 16, 2008) (taking prejudice into account and granting bifurcation under similar facts).

**D.      The City will agree to entry of judgment against it if Plaintiffs prevail against the individual defendants.**

To ensure that bifurcation does not affect Plaintiffs' recovery of any compensatory damages a jury may award them on their claims against individual defendants, and to obviate the need for proving their claims against Municipal Defendants, the City is prepared to unequivocally agree to an entry of judgment against it and assure payment as long as Plaintiffs can prove through trial or dispositive motion that the named individual defendants violated

Hanna's constitutional rights. The City's proposed undertaking (Certification to Entry of Judgment against Defendant City of North Chicago) is attached as Exhibit F.

The terms of the Certification ensure that Plaintiffs will not have to prove the elements of their Section 1983 claims against Municipal Defendants to get a judgment against them. This is a significant benefit, as pursuing claims against Municipal Defendants entails a heavy burden of discovery and proof. Importantly, the Certification also assures Plaintiffs of payment of compensatory damages as long as they prove that Hanna's constitutional rights were violated, even if the named individual defendants successfully assert a qualified immunity defense in a dispositive motion on the ground that the offending conduct did not violate a clearly established right.[2] Finally, as a matter of law, Plaintiffs cannot recover any additional compensatory damages if they prevail against the City on their *Monell* claims after finding of liability against the individual defendants. *See Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985).

## CONCLUSION

The outcome of this case – a determination of whether Hanna's constitutional rights were violated and the damages (if any) to which Plaintiffs are entitled – depends entirely on what transpired between Hanna and Defendant Officers during their encounter at his home on November 6, 2011, and not at all on the conduct or policies of Municipal Defendants or other police officers at other times and in other places. Evidence of the conduct or policies of Municipal Defendants is irrelevant to prove that Defendant Officers violated Hanna's rights. On the other hand, such evidence, if introduced at trial, will likely prejudice Defendant Officers. So, separating Plaintiffs' claims and avoiding time and money in conducting discovery and trial on

---

[2] The City is also statutorily obligated to indemnify the individual defendants for judgments resulting from harms they inflict while acting within the scope of their employment. See 745 ILCS 10/9-102.

the claims pertaining to Municipal Defendants is the way to resolve this case expeditiously, efficiently, and without prejudice to any party.

For the foregoing reasons, the City, Mayor Rockingham, and Chief Newsome request this court to (1) bifurcate the Section 1983 policy claims against them (*Monell* claim in Count VIII and inadequate hiring, training, and supervision claim in Count IX) from the claims against Defendant Officers, pursuant to Federal Rule of Civil Procedure 42(b); and (2) stay discovery and trial on the Section 1983 claims against them until resolution of all claims against Defendant Officers.

Respectfully submitted,

**CITY OF NORTH CHICAGO, LEON ROCKINGHAM, JR. and MICHAEL NEWSOME**

By: *s/Bhairav Radia*
One of their attorneys

Clifford G. Kosoff
Julie M. Koerner
Elisha S. Rosenblum
Benjamin M. Jacobi
Bhairav Radia
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: 847/291-0200
Facsimile: 847/291-9230
E-mail:bradia@okgc.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GLORIA CARR and DELOREAN MCKINNEY as Co-Special Administrators of the Estate of DARRIN E. HANNA, deceased, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 11 CV 8836 |
| v. | ) ) ) | |
| CITY OF NORTH CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2012, I electronically filed Municipal ***Defendants City of North Chicago, Leon Rockingham, Jr. and Michael Newsome's Motion to Bifurcate Plaintiffs' Claims and to Stay Discovery and Trial on the §1983 Claims Against Them*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following registered CM/ECF participant(s):

| | |
|---|---|
| Kevin William O'Connor | Laura L. Scarry |
| Muriel Collison | James DeAno |
| koconnor@co-injurylaw.com | Howard P. Levine |
| mcollison@co-injurylaw.com | lscarry@deanoandscarry.com |
| | jimdeano@deanoandscarry.com |
| | hlevine@deanoandscarry.com, |

**CITY OF NORTH CHICAGO, LEON ROCKINGHAM, JR. and MICHAEL NEWSOME**

By: *s/Bhairav Radia*
Bhairav Radia, # 6293600
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Phone: 847/291-0200
Fax:    847/291-9230
E-mail:bradia@okgc.com