# BACKGROUND

I have completed my review of the investigation conducted by Independent Investigator Robert JOHNSON into the actions of the North Chicago Police, as it pertains to an incident that occurred on November 6, 2011 at 1649 Park Avenue, Apt E, North Chicago, Illinois.

It should be noted that two previous investigations were conducted, one by the Illinois State Police, Public Integrity Unit and another by the Lake County State's Attorney. I have also reviewed those files.

The Illinois State Police investigation found that the North Chicago Police acted reasonably and appropriately. The Lake County State's Attorney, based upon the facts gathered by the Illinois State Police investigators and a review of applicable state law, concluded that North Chicago Police utilized reasonable and appropriate force to affect the arrest of Darrin HANNA and then closed the investigation.

The third investigation of this incident, as conducted by Investigator Robert JOHNSON, was to focus on the actions of the North Chicago Police and their compliance with North Chicago Police Department Rules and Regulations, General Orders, policy and procedures, which were in existence on November 6, 2011.

My findings are based on information gathered by Robert JOHNSON and the Illinois State Police. This includes a review of all available documents, including but not limited to, audio recordings, evidence photographs, Grand Jury transcripts, other transcripts, North Chicago Police Department General Orders and Rules and Regulations, North Chicago Police Reports, Illinois State Police Reports, North Chicago Police Officer Statements, victim statements, witness statements, etc.

In addition to the above evidence and findings, I have considered evidence and statements brought forth at City Council meetings by concerned citizens, especially Ralph Peterson, a cousin of Mr. HANNA.

In coming to my decision regarding the conduct of the officers involved in the arrest of Mr. HANNA, I was mindful both of the prevalence of domestic violence and the extreme risk to which the officers were subjecting themselves in responding to a domestic violence call. On average, three women are murdered every day in domestic violence incidents.[1] Between 1996 and 2009, 106 police officers were killed in the line of duty while responding to a domestic

---

[1] http://www.now.org/issues/violence/stats.html

1

violence incident.[2] Our officers came into contact with Mr. HANNA in a dark apartment where, shortly after the officers entered, Mr. HANNA rushed out of a bedroom, fists clenched and clearly under the influence of a substance or combination of substances, and almost immediately lunged at the nearest officer. Statistics indicate and my own experience confirms that the first two minutes on a domestic violence call are the most dangerous to officers, as well as victims and offenders. Additionally, the Illinois Domestic Violence Act of 1986 required the officers to make contact with the complainant on a domestic violence call, and the officers had been unable to speak with Dionne WILCOX, the source of the complaint against HANNA, prior to forcing entry into the apartment.[3] Courts have held municipalities civilly liable for failing to make contact with complainants on domestic violence calls.[4] Failure to enter the apartment would have been a violation of both Illinois law and the North Chicago Police Department Rules and Regulations.

## FACTUAL FINDINGS AND DISCIPLINE IMPOSED

My review revealed that a 911 call was placed to the North Chicago Police Department by Darlene WILCOX at 9:16pm, requesting the police respond to 1649 Park Avenue, Apartment 2E., because her sister Dionne WILCOX was involved in a domestic disturbance with Darrin HANNA.

The call was dispatched at 9:19pm. It is my opinion that the call for service was dispatched within a reasonable time and was not unnecessarily delayed. The North Chicago Police Department dispatcher's actions were in compliance with North Chicago Police General Orders, Rules and Regulations, as well as Policies and Procedures, existing on November 6, 2011.

Upon responding to the location of 1649 Park Avenue, the officers were met by Darlene WILCOX who informed them that her sister was being battered in apartment 2E and was unable to leave the location. She also related that Dionn WILCOX was observed naked on the balcony. The officers attempted but were unable to gain immediate access into the apartment complex.

After ringing bells and knocking on windows, waiting several minutes for a response, an occupant from apartment 2W gave admittance to the location. As the officers reached apartment 2E, they heard what was described as a female moaning and crying. They pounded on the door but received no answer. As a direct result of the nature of the call, coupled with information received from Darlene WILCOX and the distress sounds they heard emanating from

---

[2] http://www.policechiefmagazine.org/magazine/index.cfm?fuseaction=display_arch&article_id=2378&issue_id=5 2011

[3] 750 ILCS 60/304

[4] Doe v. Calumet City, 161 Ill.2d 374, 641 N.E.2d 498 (1994).

2

within Apartment 2E, as well as the occupant of apartment 2C informing them that the residents of 2E had been fighting, a decision was made to force entry. The responding officers were aware of an outstanding felony warrant for Mr. Hanna for aggravated battery to a pregnant person, against the same Dionne WILCOX, issued less than three weeks prior to November 6.[5]

Based on the above facts, as it pertains to the forced entry, it has been determined that the officers actions were lawful and proper and in compliance with North Chicago Police General Orders, Rules and Regulations, as well as Policies and Procedures, existing on November 6, 2011.

Upon entry, the apartment was discovered to be void of light and furniture. As the officers continued within the apartment, a female, identified as Dionne WILCOX ran naked from the bedroom yelling for assistance, being followed shortly thereafter by a clenched-fisted Darrin HANNA.

HANNA lunged toward Police Officer Tristan BORZICK and was immediately taken to the floor by BORZICK, with BORZICK landing on top of HANNA. BORZICK attempted to grab and control HANNA's left arm to handcuff him, but to no avail. He was subsequently assisted on the lower left side of HANNA by Officers Jayson GERYOL and Arthur STRONG. GERYOL used his hand to hold HANNA's left arm for cuffing and eventually cuffed the right arm. STRONG was on the lower left side of HANNA, attempting to gain compliance through the use of a baton.

A review of the statements and other supporting documents within the investigative file reveal the allegations that Officer Tristan BORZICK used excessive or unreasonable force against Darrin HANNA are not based on fact. After subduing HANNA, BORZICK held HANNA'S left arm in an effort to affect an arrest. His actions were in compliance with North Chicago Police General Orders, Rules and Regulations, as well as Policies and Procedures, existing on November 6, 2011. Therefore Police Officer Tristan BORZICK's administrative leave is cancelled and he is restored to full duty.

Police Officer Jayson GERYOL assisted in the physical arrest of Darrin HANNA by positioning himself on HANNA's left side near his buttocks and thigh area. Officer GERYOL attempted to control HANNA's arm for handcuffing by manipulating or twisting the hand and the arm in such a manner that he could place handcuffs on the subject. GERYOL used force that was appropriate and necessary in affecting the arrest of HANNA. His actions were in compliance with North Chicago Police General Orders, Rules and Regulations, as well as Policies and

---

[5] 11 CF 3500, People v. Darrin Hanna. The date of incident was October 16, 2011 and the warrant was issued October 21, 2011.

3

Procedures, existing on November 6, 2011. Therefore Police Officer Jayson GERYOL's administrative leave is cancelled and he is restored to full duty.

Police Officer Gary GRAYER also assisted in the physical arrest of Darrin HANNA. He was positioned near the upper right side of HANNA. Officer GRAYER is certified to use a taser and after determining HANNA was physically resisting arrest, not complying with officers attempts to affect his arrest, GRAYER deployed his taser. All reports and documentation reveal the taser was utilized as a compliance tool. It was not used to punish or inflict unnecessary harm to HANNA but as a method to draw compliance. GRAYER reports that he deployed the taser twice in the large muscle mass of HANNA's back in the dry stun mode. However the taser did not appear to have any effect on HANNA.

Reports and photographs indicate HANNA had several marks on his back that were possibly due to the deployment of the taser. However, GRAYER and others state the taser was deployed only twice. Whether the taser was deployed by GRAYER two or seven times is not an issue if the deployment was in compliance with directives and policies existing on November 6th, 2011. After the review of statements and other documents relative to the arrest of HANNA as well as the North Chicago Police Department's Taser Policy and other directives, it has been determined that the force used by Police Officer Gary GRAYER was appropriate and necessary in affecting the physical arrest of Darrin HANNA. His actions were in compliance with North Chicago Police General Orders, Rules and Regulations, as well as Policies and Procedures, existing on November 6, 2011. Therefore Police Officer Gary GRAYER's administrative leave is cancelled and he is restored to full duty.

Police Officer Marc KESKE was dispatched to 1649 Park Avenue on November 6, 2011. Officer KESKE participated in the physical arrest of Darrin HANNA by positioning himself near the lower right side of HANNA. HANNA was reportedly using his feet to kick and resist arrest. In an effort to affect the arrest and obtain compliance KESKE used his baton on the large muscle mass groups on HANNA's left thigh and calf.

When HANNA was handcuffed, KESKE stopped the usage of the baton. Police Officer Marc KESKE used force that was appropriate and necessary in affecting the arrest of HANNA and those actions were in compliance with North Chicago Police General Orders, Rules and Regulations, as well as Policies and Procedures, existing on November 6, 2011. Therefore Police Officer Marc KESKE's administrative leave is cancelled and he is restored to full duty.

Police Officer Arthur STRONG assisted in the physical arrest of Darrin HANNA by positioning himself on HANNA's left side near his feet. Officer STRONG attempted to assist in affecting the physical arrest of HANNA by striking HANNA in the large muscle mass groups on HANNA's right thigh and right calf with a baton. Before HANNA was handcuffed STRONG used force that was appropriate and necessary in affecting the arrest of HANNA. No subsequent force was used by

4

STRONG. The above actions of Police Officer Arthur STRONG were in compliance with North Chicago Police General Orders, Rules and Regulations, as well as Policies and Procedures, existing on November 6, 2011.

Police Officer Arthur STRONG on November 6, 2011 submitted two reports relative to the circumstances surrounding the physical arrest and attempt to restrain Darrin HANNA. The Use of Force report and incident report conflict with each other, as well as his statements, as it pertains to the actions of Darrin HANNA as HANNA appears and exits the bedroom.

After a review of these reports it was determined that Police Officer Arthur STRONG submitted a false report in violation of Section 5.2 of the Rules and Regulations of the North Chicago Police Department entitled False reports, when he falsely wrote on his incident report that Darrin HANNA swung a flashlight back and forth and pointed it at the officers in an aggressive manner. This report of HANNA'S actions is contrary to other statements and reports that HANNA exited the bedroom with two clenched fists.

As a result of the aforementioned and after taking into consideration Police Officer Arthur STRONG'S complimentary and disciplinary histories, it has been determined that Arthur STRONG will be suspended without pay for a period of thirty (30) consecutive days.

Police Officer Brandon YOST responded to 1649 Park Avenue as an assist to other assigned and responding units. Officer YOST and other officers on the scene reported that YOST assisted in the physical arrest of Darrin HANNA by positioning himself near HANNA's head. YOST gave several statements and submitted at least three reports relative to his participation and the circumstances of Darrin HANNA's physical arrest. YOST reported that HANNA was violently resisting arrest and attempting to head butt and bite him (YOST). Other officers reported that they were told by YOST that HANNA had tried to bite, but these actions of HANNA were not observed by other reporting officers.

YOST further reported that he had positioned his body on HANNA's shoulder and neck area, kneeling on his left side. In an effort to further assist other officers in affecting an arrest YOST stated that he struck Darrin HANNA with a closed fist in the facial area starting at a position of 8-12 inches away. YOST also states that he put HANNA in a headlock and pulled his head back. Yost stated these actions were to prevent HANNA from head butting or biting YOST.

After a review of available statements, reports, North Chicago Police Department General Orders, Rules and Regulations and policy and procedure, it is determined that numerous actions of Police Officer Brandon YOST were not in compliance with Department Directives that were in existence on November 6, 2011.

It is determined that Police Officer Brandon YOST violated Section 5.2 of the Rules and Regulations of the North Chicago Police Department entitled False Reports in that he submitted a false written report on November 6, 2011 when he failed to include in his Use of Force report that he put Darrin HANNA in a headlock, pulled HANNA's head back and hit him in the eye.

It is determined that Police Officer Brandon YOST violated Section 5.2 of the Rules and Regulations of the North Chicago Police Department entitled False reports when he falsely stated to State Police investigators that he was assisting with the arrest of Darrin HANNA when he struck HANNA in the eye with a closed fist.

It is determined that Police Officer Brandon YOST violated Section 5.2 of the Rules and Regulations of the North Chicago Police Department entitled False reports when he falsely stated to State Police investigators that he was assisting with the arrest of Darrin HANNA when he put Darrin HANNA in a headlock and pulled his head back.

It is determined that Police Officer Brandon YOST violated Section 5.2 of the Rules and Regulations of the North Chicago Police Department entitled False reports when he falsely stated that Darrin HANNA attempted to bite or head butt him, knowing he had HANNA in a headlock and was pulling his head back, striking him in the facial area with a closed gloved fist rendering an inability, by his actions for HANNA to bite or head butt him.

(Note: It was November 6th and YOST was wearing long sleeves and gloves.)

It is determined that Police Officer Brandon YOST violated Section 5.2 of the Rules and Regulations of the North Chicago Police Department entitled False reports when he failed to inform Investigator Robert JOHNSON that he put Darrin HANNA in a headlock and pulled his head back.

It is determined that Police Officer Brandon YOST violated subsection 14.1 of the Rules and Regulations of the North Chicago Police Department entitled Standard of Conduct when he struck Darrin HANNA twice in face with a closed gloved fist causing swelling to the eye and facial area which brought disrepute to the North Chicago Police Department.

It is determined that Police Officer Brandon YOST violated subsection 14.1 of the Rules and Regulations of the North Chicago Police Department entitled Standard of Conduct when he placed Darrin HANNA in a headlock and pulled his head back, in an effort to strike Darrin HANNA twice in eye/face with a closed gloved fist, thereby bringing disrepute to the North Chicago Police Department.

It is determined that Police Officer Brandon YOST violated subsection 18.11 of the Rules and Regulations of the North Chicago Police Department entitled Conduct Unbecoming of an Officer

when he placed Darrin HANNA in a headlock and pulled his head back, in an effort to strike Darrin HANNA twice in face with a closed gloved fist, thereby bringing discredit to the North Chicago Police Department.

It is determined that Police Officer Brandon YOST violated subsection 18.11 of the Rules and Regulations of the North Chicago Police Department entitled Conduct unbecoming of an officer when he told Illinois State Police investigators and Investigator Robert JOHNSON that he, Brandon YOST, struck Darrin HANNA in face with his fist, thereby bringing discredit to the North Chicago Police Department.

It is determined that Police Officer Brandon YOST violated Rules and Regulations of the North Chicago Police Department Section 19, subsection 19.1 entitled, The Use of Force in that Police Officer Brandon YOST used such force when he twice hit Darrin HANNA in the face with a closed fist from 8-12 inches away which caused swelling to the eyes of Darrin HANNA. There were other options available to YOST if his intention was to assist in controlling HANNA to affect an arrest. YOST could have assisted in restraining the right arm for handcuffing.

It is determined that Police Officer Brandon YOST violated General Order 7 (G.) (b.) (xiii.) of the North Chicago Police Department, in that he did not make all reasonable efforts to avoid striking persons in the head, neck, or genitals when he put HANNA in a headlock, pulled his head back, and struck him in the facial area twice with a closed fist.

As a direct result of the aforementioned actions of Police Officer Brandon YOST, and taking into consideration the previous complimentary and disciplinary histories of this officer, it is determined that Police Officer Brandon YOST, will be terminated from the North Chicago Police Department.

On November 6, 2011, Sergeant Salvatore CECALA was assigned as the shift supervisor, with regular duty hours of 2:00 pm until 10:00pm. Sergeant CECALA while at the desk was monitoring his radio and heard a request for fire department assistance for a forced entry at 1649 Park Avenue. CECALA responded that he was en route to the location. CECALA's arrived at the location to discover entry had been made to the apartment complex when an occupant from apartment 2W opened the door. It was further discovered that a forced entry was made into apartment 2E by responding police officers due to the officers hearing what could be described as a woman in distress.

As CECALA was ascending the stairs, a completely nude female came running downstairs, throwing herself into CECALA's arm. The female later identified as Dionne WILCOX was frightened, shaking and wet. CECALA immediately called for an ambulance and gave the female a coat to shield her from the cold. Once the ambulance arrived for WILCOX, CECALA continued to apartment 2E where he discovered a second ambulance was called for HANNA.

CECALA took control of the scene, requested an additional evidence technician and directed the processing of the apartment. CECALA rode to the hospital with HANNA, assigned a guard and began to gather information relative to the circumstances of the arrest, status of the arrestee and victim. It should be noted that the guard detail for the arrestee was canceled, for unknown reasons, by the then Chief of Police, Michael Newsome.

CECALA remained at the hospital but continuously directed and supervised officers at three locations, the Vista Medical Center, 1649 Park Avenue and the officers that were preparing arrest, incident and use of force reports at the North Chicago Police facility. CECALA remained on duty nearly ten hours after his regular tour of duty to ensure information relative to the circumstances surrounding the arrest of Darrin HANNA was documented.

It was later discovered that CECALA did not sign two Use of force Reports and did not include the serial number of the taser that was deployed by Officer Gary GRAYER in his report. Although the explanations given by Sergeant CECALA regarding his oversights are plausible, nonetheless he violated North Chicago Police Department policy. Due to this minor transgression and the fact that all other necessary documents were completed, evidence collected and the circumstances relative to police actions at 1649 Park Avenue were well preserved and recorded as a result of CECALA's direction or personal involvement, it is determined that Sergeant Salvatore CECALA's inattention to duty is noted, but no disciplinary action is warranted. Therefore Sergeant Salvatore CECALA's administrative leave is cancelled and he is restored to full duty.

James B. Jackson
Interim Chief of Police
North Chicago Police