IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLORIA CARR and DELOREAN          )
MCKINNEY as CO-Independent        )
Administrators of the Estate of   )
DARRIN E. HANNA, deceased,        )          No. 11 C 8836
                                  )
        Plaintiffs,               )
                                  )
    v.                            )
                                  )          Magistrate Judge Keys
CITY OF NORTH CHICAGO, et al.,    )
                                  )
        Defendants.               )

## <u>MEMORANDUM OPINION AND ORDER</u>

On November 6, 2011, North Chicago police officers responded to a domestic battery call at the home of Darrin E. Hanna. Mr. Hanna left on a stretcher and died seven days later. On December 13, 2011, Mr. Hanna's mother Gloria Carr and son Delorean McKinney ("Plaintiffs")[1] filed this suit against the City of North Chicago ("City"), North Chicago Mayor Leon Rockingham, Jr., and former North Chicago Police Chief Michael Newsome (collectively, "Municipal Defendants") as well as six North Chicago police officers and one North Chicago police sergeant (collectively, "Defendant Officers"). In their Third Amended Complaint, Plaintiffs assert *42 U.S.C. § 1983* claims for violations of Mr. Hanna's *Fourth* and/or *Fourteenth Amendment* rights against the City and Defendant Officers alleging excessive force (Count I), failure to protect (Count III), and conspiracy

---

[1] Mr. Hanna also has an infant daughter, Rihanna Marie Hanna, who was born after his death. (3d Amend. Compl. at ¶ 4.)

to interfere with Civil Rights (Count X); state law claims against the City and Defendant Officers alleging wrongful death (Count II), survival (Count IV), assault and battery (Count VI), and negligence (Count VII); a state law claim against the City for indemnification (Count V); and *42 U.S.C. § 1983* claims against the Municipal Defendants alleging a policy and practice of excessive force (Count VIII) and negligent hiring, training and supervision (Count IX) ("*Monell* claims").  Currently before the Court is the Municipal Defendants' motion to bifurcate the *Monell* claims and stay discovery and trial on those claims until the claims against the Defendant Officers are resolved.  For the reasons explained below, the motion is granted.

### Factual Background

On November 6, 2011, Defendant Officers responded to a call of domestic battery at Mr. Hanna's home in North Chicago, where they made a forced entry. (3d Amend. Compl. at ¶¶ 11-12.; Answer ¶¶ 11-12.)  The domestic dispute was apparently between Mr. Hanna and his girlfriend.  After entering the apartment, Defendant Officers allegedly Tasered and beat Mr. Hanna repeatedly "before and/or after he was placed in handcuffs." (3d Amend. Compl. at ¶¶ 15-16.)  The Third Amended Complaint further alleges that Mr. Hanna was not armed (*Id.* at ¶ 13), and that no Defendant Officer attempted to protect him from the beating. (*Id.* at ¶ 17.)  It is undisputed that Mr. Hanna left his home on a stretcher.  He was

taken to Vista East Memorial Hospital and died seven days later.
The Third Amended Complaint alleges that the conduct of Defendant
Officers constituted excessive force against Mr. Hanna, in
violation of his constitutional right to be free from such force
(*Id.* at ¶ 19, 21-22), and that the Municipal Defendants
"acquiesced and/or promoted" a pattern and practice of excessive
force and the use of Tasers by the City's police officers. (*Id.*
at ¶ 20.)

## Discussion

*Federal Rule of Civil Procedure 42(b)* states, in relevant
part, that "[f]or convenience, to avoid prejudice, or to expedite
and economize, the court may order a separate trial of one or
more separate issues, claims, crossclaims, counterclaims, or
third-party claims." *Fed. R. Civ. P. 42(b)*.  As *Rule 42(b)*'s
language suggests, courts have broad discretion in deciding
whether to bifurcate issues presented in a case or to try them
separately.  *Krocka v. City of Chicago, 203 F.3d 507, 516 (7th
Cir. 2000)*.  Certain conditions, however, must be met in order to
support a motion to bifurcate.  A court must determine if
separate trials would avoid prejudice to a party or serve the
purpose of judicial economy, though only one of these criteria
need be met.  *Houseman v. U.S. Aviation Underwriters, 171 F.3d
1117, 1121 (7th Cir. 1999); MCI Communications v. Am. Tel. & Te.
Co., 708 F.2d 1081, 1166 (7th Cir. 1983)*.  This standard also

3

applies when, as here, a plaintiff brings a *§ 1983* claim against a municipality pursuant to *Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)* (authorizing claims for constitutional harms resulting from a municipality's customs and policies). *See Treece v. Hockstetler, 213 F.3d 360, 364-65 (7th Cir. 2000); Medina v. City of Chicago, 100 F. Supp.2d 893, 894 (N.D. Ill. 2000)* ("There is no question that a district court has the discretion to sever a *Monell* claim against a municipality from claims against individual police officers and stay litigation of the *Monell* claim until the rest of the case is resolved.") (internal quotation marks and citation omitted).

## I. Convenience and Judicial Economy

Municipal Defendants argue that bifurcation of the *Monell* claims against them will promote convenience and judicial economy, as those claims can only succeed if it is first determined that the Defendant Officers violated Mr. Hanna's constitutional rights. (Def.'s Mot. at 4.) Applying the three factors of *Thomas v. Cook County Sheriff's Dep't., 604 F.3d 293, (7th Cir. 2009)*, Municipal Defendants argue that the claims against it are "wholly contingent on the conduct of Defendant Officers." (Def.'s Mot. at 4.) As a result, Municipal Defendants opine that a finding that the Defendant Officers did not violate Mr. Hanna's rights, but the Municipal Defendants are nonetheless

4

liable for a constitutional harm, would be inconsistent and contrary to *City of Los Angeles v. Heller, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986).* (Def.'s Mot. at 8.) A finding in favor of Defendant Officers will, therefore, also resolve the *Monell* claims. On the other hand, if the Defendant Officers are found to have violated Mr. Hanna's constitutional rights, the Municipal Defendants argue that their proposed Certification of Entry of Judgment Against Defendant City of North Chicago will likewise relieve the Plaintiffs of any need to litigate the *Monell* claims. (*Id.* at 13.) Therefore, since the *Monell* claims will not need to be litigated regardless of who ultimately prevails, Municipal Defendants assert that bifurcation will allow both the court and the parties to avoid the time and costs involved in the *Monell* discovery and litigation.

Conversely, Plaintiffs argue that bifurcation will encourage "piecemeal li[ti]gation of individual claims" because the Defendant Officers could prevail on a qualified immunity defense, requiring a second trial on the *Monell* claims. (*Id.* at 6-7.) Plaintiffs additionally contend that the *Monell* discovery will be limited, and some of that discovery will be needed to litigate their claims against Defendant Officers. (*Id.* at 8.) Bifurcation would therefore not result in any economies. Lastly, Plaintiffs argue that bifurcation would ignore valid non-economic interests involved in the *Monell* claims. (Pl.'s Resp. at 5-6.)

## A. The Liability Issues

Municipal Defendants correctly point out that Plaintiffs have not responded to the argument that Plaintiffs can only prevail on their *Monell* claims if there is a finding that the Defendant Officers violated Hanna's constitutional rights. This does imply that Plaintiffs have conceded the argument. *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc., No. 02 C 4394, 2006 WL 3542332 *3 (N.D. Ill. Dec. 6, 2006)*. Even if Plaintiffs had squarely addressed the matter, however, Municipal Defendants would prevail on this point. The *Monell* claims are entirely dependant on the claims against Defendant Officers. This fact strongly favors bifurcation, as the *Monell* claims need not be reached if Defendant Officers prevail on the claims against them.

Where a plaintiff brings a *Monell* claim against a municipality based on the specific conduct of a municipality employee, the plaintiff cannot prevail on that *Monell* claim without first showing that the employee violated the plaintiff's constitutional rights. *Heller, 475 U.S. at 799*. Although the Court in *Heller* did not state that the employee must be *liable* for the violation, this became a question in the lower courts. In *Thomas*, the Seventh Circuit addressed whether *Heller* in fact established a rule that a plaintiff must show that the individual employee is not merely the instrument of plaintiff's harm but is

6

also *liable* for that harm before a *Monell* claim can succeed. *Thomas* concluded that *Heller* did not establish such a rule. Rather, the rule in *Heller* is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas, 604 F.3d at 305*. *Thomas* set forth three factors to consider in determining whether a municipality's liability depends on the actions of its officers: (1) the nature of the constitutional violation that the plaintiff alleges; (2) the theory of municipal liability that supports the *Monell* claim; and (3) the defenses that the individual defendants have asserted. *Id.*

A predicate to recovery under *Monell* is, of course, a constitutional injury. *Heller, 475 U.S. at 799*. ("[N]either *Monell v. New York City Dept. of Social Services*…nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." (citation omitted)) In *Thomas,* a pre-trial detainee at Cook County Jail died a few days after being admitted. The decedent's mother sued individual correctional employees under *§ 1983* for deliberate indifference to her son's serious medical needs, and sued the Cook County Sheriff and Cook County under a *Monell* policy, practice, and custom theory. The constitutional violation in that case required a culpable mental

state—deliberate indifference—on the part of the individual defendants. There, it was possible that the individual defendants were not deliberately indifferent but rather could not respond properly because the County's policies prevented them from doing so. *Thomas, 604 F.3d at 305.* In other words, even if the individual defendants were not liable, the plaintiff could have, nonetheless, suffered a constitutional injury inflicted by the County's policy. In contrast, an excessive force claim does not require proof of a culpable mindset. As Municipal Defendants correctly point out, excessive force claims are analyzed under the *Fourth Amendment* standard of "objective reasonableness." *Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).* If there was no excessive force, there was no injury to constitutional rights. *Sallenger v. City of Springfield, 630 F.3d 499, 505, 2010 WL 5128850, at *5 (7th Cir. 2010); Matthews v. City of East St. Louis, 675 F.3d 703, 709 (7th Cir. 2012).*

Here, all of the claims against the Defendant Officers are contingent on the claim that they used excessive force against Mr. Hanna. If there was no excessive force, Mr. Hanna did not suffer an injury to his constitutional rights. If Mr. Hanna did not suffer an injury to his constitutional rights, then there is no constitutional harm that the Municipal Defendants could be held liable for. Therefore, Plaintiffs' claims against Municipal

Defendants are wholly contingent on the excessive force claim against Defendant Officers. If the *Monell* claims are bifurcated and the Defendant Officers prevail, the time and expense involved in litigating the *Monell* claims will be saved. The liability issues in this case therefore favor bifurcating the *Monell* claims.

**B. Municipal Defendants' Certification of Entry of Judgment**

In conjunction with their motion to bifurcate, Municipal Defendants have offered a Certification of Entry of Judgment Against Defendant City of North Chicago ("certification"). (Def.'s Mot. App. 6.) Municipal Defendants argue that the certification will ensure that Plaintiffs recover any compensatory damages awarded to them, while allowing Plaintiffs to avoid the "heavy burden of discovery and proof" that *Monell* claims entail. (Def.'s Mot. at 14.) Plaintiffs counter that the agreement is "worthless" because North Chicago may have solvency issues "…and there is no stipulation that the insurance company will indemnify for the multiple claims of excessive force and police brutality currently pending including this matter." (Pl.'s Resp. at 3, 5.) In other words, Plaintiffs argue that, because the City's insurance company is not a party to the agreement and may ultimately refuse to pay on a judgment, the certification guarantees nothing. They argue that this, and the fact that the Defendant Officers may prevail on a qualified immunity defense,

could mean that bifurcation will result in more litigation rather than less. The Court disagrees.

Municipal Defendants concede that North Chicago carries liability insurance, unlike larger municipalities that may be self-insured. (Def.'s Reply at 11.) Plaintiffs do not demonstrate, however, why this fact counsels against bifurcation. Plaintiffs assert that "[b]ifurcation could actually promote additional litigation by way of an insurance indemnification suit if an officer is found individually liable" (Pl.'s Resp. at 5), but they fail to explain why the result will be different if the *Monell* claims are not bifurcated. Without any case support or further explanation, the presence or absence of liability insurance appears to this Court to be a distinction without a difference, and immaterial to the bifurcation decision. The certification will ensure that a judgment is entered against the City if an individual defendant is found to have violated Mr. Hanna's constitutional rights. Plaintiffs have given the Court no reason to believe that the method by which judgment is entered will alter whether the insurance company decides to pay or challenge the claim. If an insurance indemnification suit is a legitimate concern, it is a concern whether or not this Court bifurcates the *Monell* claims.

Next, Plaintiffs' contention that a second trial will be needed if the Defendant Officers prevail on a qualified immunity

defense overlooks the fact that the certification here does not require a finding that the Defendant Officers are *liable*. As a preliminary matter, defendants are not likely to prevail on a qualified immunity defense in the context of excessive force allegations. *See, e.g., Readus v. Dercola, 2012 WL 1533167, at *3 (N.D. Ill. May 1, 2012); Tanner v. City of Waukegan, 10 C 1645, 2011 WL 686867, at *6 (N.D. Ill. Feb. 16, 2011)* (collecting cases). A court in this District has even suggested that asserting qualified immunity in the context of an excessive force claim may run afoul of *Federal Rule of Civil Procedure 11. Readus, 2012 WL 1533167, at *3.* Regardless, if Defendant Officers do prevail here on a qualified immunity defense, judgment will nonetheless be entered against the City. The certification provides that judgment will be entered "…if the finder of fact at trial, or the court through a dispositive motion, finds that any individual defendant violated Plaintiff's constitutional rights…" (Def.'s Mot. Ex. 6 at 2.) The certification does *not* require that an individual defendant be found *liable* for the injury; it only requires a finding that an individual defendant violated Plaintiff's constitutional rights, regardless of any immunity from liability.

Plaintiffs cite *Cage v. City of Chicago, 9 C 3078, 2010 WL 3613981 (N.D. Ill. Sep. 8, 2010),* for support, but the certification in that case was quite different. The claims in

*Cage* centered on an allegation that the City of Chicago had a policy of withholding exculpatory lab evidence. At that stage of the lawsuit, there were still unidentified/unnamed defendants. The City's certification agreed to entry of judgment only if a *named* defendant was found to have violated Plaintiff's rights. *Cage, 2010 WL 3613981, at *1.* In fact, the Plaintiff in that case was prepared to agree to bifurcation "if the City agrees unequivocally to have judgment entered against it should Plaintiff prove a constitutional violation by any City employee, not just the named Defendants." *Id. at *2* (internal quotation marks omitted). The City's certification in *Cage* was not invalid, as Plaintiff's here contend; it was inadequate.

In the *Fourth Amendment* context of false arrest and excessive force claims, courts in this District tend to grant bifurcation of *Monell* claims where the municipality offers a certification of entry of judgment. *See, e.g., Castillo v. City of Chicago, No. 11 C 7359, 2012 WL 1658350 (N.D. Ill. May 11, 2012); Readus, No. 09 C 4063, 2012 WL 1533167 (N.D. Ill. May 1, 2012); Guzman v. City of Chicago, No. 09 C 7570, 2011 U.S. Dist. LEXIS 20031 (N.D. Ill. Mar. 1, 2011); Tanner v. City of Waukegan, No. 10 C 1645, 2011 WL 686867 (N.D. Ill. Feb 16, 2011). See also Clarett v. Suroviak, No. 09 C 6918, 2011 WL 37838 (N.D. Ill. Jan. 3, 2011)* (where plaintiff's claim was based on false arrest and at that stage of discovery it was unclear whether defendants'

qualified immunity defense had merit, bifurcation of the *Monell* claim was denied but *Monell* discovery was stayed); *Glessner v. Village of Bartlett, No. 09 C 7917, 2011 U.S. Dist. LEXIS 42612 (N.D. Ill. Apr. 18, 2011)* (not argued under *Rule 42(b)*, but Village's motion to waive the protection of *Monell* and bar *Monell*-related discovery granted). Recent arrest cases where bifurcation was denied despite the offer of a comprehensive certification have involved unusual procedural situations that are not present in this case. *See Bradley v. City of Chicago, No. 09 C 4538, 2010 WL 432313 (N.D. Ill. Feb 3, 2010)* (where a police officer was the defendant in more than a dozen nearly identical lawsuits and *Monell* discovery was underway in at least one of those suits, bifurcation was denied); *Bell v. City of Chicago, No. 09 C 4537, 2010 WL 432310 (N.D. Ill. Feb 3, 2010)* (same).

Plaintiff's argument that "there is no guarantee that MUNICIPAL DEFENDANTS will concede liability under 745 ILCS 10/9-102 if a verdict is rendered against the individual officers" (Pl.'s Resp. at 7) misses the mark. The certification is in fact the guarantee that Plaintiffs will have a judgment against the City for all the compensatory damages that are awarded. Whether the Defendant Officers are indemnified will have no impact on the amount Plaintiff is able to recover because the City will already be liable for the entire amount. Even without the certification,

the Plaintiff's further contention that the City might argue that
the Defendant Officers were not acting within the scope of their
employment fails to acknowledge that the City has, in fact,
already admitted that they were acting within the scope of
employment. (Municipal Defendants' Ans. at ¶¶ 10, 24, 46, 52.)

In sum, the proposed certification ensures that judgment for
compensatory damages will be entered against the City if
Plaintiffs are able to prove that a Defendant Officer violated
Mr. Hanna's constitutional rights, regardless of whether that
Defendant Officer is himself liable.  As Municipal Defendants
point out, the certification also means that Plaintiffs will be
able to avoid the additional costs that could be involved in
enforcing indemnification rights if "Plaintiffs prevail against
Defendant Officers, but not against the Municipal Defendants."
(Def.'s Reply at 12.)  Therefore, if the *Monell* claims are
bifurcated and the Plaintiffs' prevail, the time and costs
involved in litigating the *Monell* claims will be saved, and the
Plaintiffs' compensatory interests will be fully protected.  The
fact that the certification guarantees entry of judgment for
reasonable attorney's fees only in the event of Defendant Officer
liability is noted by the Court, but the parties have not raised
this as a concern.

14

## C. *Monell* Discovery Burdens

*Monell* discovery "can add significant time, effort, and
complications to the discovery process." *Medina v. City of
Chicago, 100 F. Supp.2d 893, 895 (N.D. Ill. 2000).* Even when
*Monell* claims are not bifurcated from claims against individual
defendants, courts have been willing to stay such discovery. *See
Clarett, 2011 WL 37838, at *3.* Accordingly, Municipal Defendants
ask the Court to stay "the onerous and extensive discovery" on
the *Monell* claims here. (Def.'s Reply at 10.) Although
Plaintiffs argue that the *Monell* discovery will not be burdensome
in this case, because many of the documents already exist and
there would be limited additional discovery, their argument is
unconvincing.

The Court has had the opportunity to review Plaintiffs'
interrogatories and document requests to the City, and they do
include the broad discovery demands so often associated with
*Monell* claims. Although Plaintiffs assert that "questioning of
the individual officers' actions in this matter will necessarily
involve comparing their actions to the training and procedures
they were required to follow" (Pl.'s Resp. at 8), there is simply
no support for such a statement. As was discussed earlier, an
excessive force claim is evaluated under the *Fourth Amendment*
standard of objective reasonableness. *Graham, 490 U.S. at 397.*
This type of claim does not normally involve any inquiry into

15

department training and policy. *Medina, 100 F. Supp. 2d at 894.*
As an example, Plaintiffs' request for information concerning
every *§ 1983* lawsuit or excessive force complaint over the last
ten years (Def. Mot. Ex. C, Plaintiffs' First Set of
Interrogatories to Defendant City of North Chicago, Question 10),
has no bearing on whether the Defendant Officers used excessive
force against Mr. Hanna in his home on November 6, 2011.  As
another example, whether any of the Defendant Officers or their
families have ever given gifts or campaign contributions to city
officials (*Id.* Question 5), also has no bearing on whether the
conduct of Defendant Officers was objectively reasonable.
Regardless of whether the latter question could bear on the
*Monell* claims, it certainly does not bear on the claims against
Defendant Officers.  Therefore, much of the *Monell* discovery
would not be at all necessary to litigate the claims against
Defendant Officers.

The Plaintiffs contend that, because much of the written
discovery is already being kept by the City pursuant to an
agreement between the City and the NAACP, the burden of producing
the material should be nominal.  The Plaintiffs do not provide
any evidence, however, that their discovery requests actually
track that agreement or what that agreement requires.
Regardless, Municipal Defendants argue that producing such
records will involve a significant burden because they will need

to review all of that material and redact as necessary.
Plaintiffs counter by pointing out that much of their request for
written discovery could be made via a Freedom of Information
(FOIA) Request. The implication is that staying the *Monell*
discovery in this case will not save Municipal Defendants any
time or money since Plaintiffs could simply compel Municipal
Defendants to provide the information in a different venue.
Although there is some merit to this point, it overlooks the fact
that Defendant Officers would not be involved in a FOIA request
and would not bear the burden of reviewing such material. As the
Defendant Officers point out, they will need to review the *Monell*
discovery and attend additional depositions, if additional
depositions are needed. (Def. Officers' Mot. to Join at ¶ 7.)[2]
If the *Monell* claims are bifurcated, Defendant Officers will not
suffer this additional burden because their interest in the case
will be concluded before discovery on the *Monell* claims begins.
Unlike the Municipal Defendants, there is no other context in
which the Defendant Officers would bear the burden of reviewing
the material. Likewise, this Court would not bear the burden of
adjudicating any conflicts that arise in a FOIA request.

   As the Court explained when discussing the certification,
*Monell* claims are most often bifurcated in this district when a

---

[2] Municipal Defendants contend that the *Monell* discovery will require
additional depositions in order to get the material into evidence. Although
this overlooks the fact that not all discovery must become evidence at trial,
this is not fatal to their argument. The scope of the written discovery alone
demonstrates a significant burden.

case is rooted in allegations of excessive force. Plaintiffs'
cases to the contrary are not on point and do not reflect the
current jurisprudence of this District, where decisions to deny a
motion to bifurcate rarely involve excessive force claims. *See,
e.g., Allison v. Gallagher, No. 10 C 6887, 2012 WL 4760863 (N.D.
Ill. Oct. 5, 2012)* (bifurcation denied where alleged employee
conduct involves deliberate indifference to medical needs of an
inmate); *Warren v. Dart, No. 09 C 3512, 2012 WL 1866372 (N.D.
Ill. May 22, 2012)* (same); *Awalt v. Marketti, No. 11 C 6142, 2012
WL 1161500 (N.D. Ill. Apr. 9, 2012)* (same); *Terry v. Cook County
Dept. of Corrections, No. 09 C 3093, 2010 WL 2720754 (N.D. Ill.
Jul. 8, 2010)* (same). *But see Demouchette v. Dart*, *2011 WL
679914 (N.D. Ill. Feb. 16, 2011)* (where the parties had not fully
developed the *Thomas* arguments, it was clear that the burden of
*Monell* discovery would be great, and the risk of prejudice to
defendants was high, bifurcation granted in deliberate
indifference context.) The *Monell* discovery burdens in this case
are significant and bifurcation is likely to allow some or all of
the parties to avoid those burdens. If *Monell* discovery and
litigation is never reached, bifurcation will also serve judicial
economy.

**D. Conclusion on Convenience and Judicial Economy**

Because the *Monell* claims in this case are entirely
dependant on whether Defendant Officers violated Mr. Hanna's

constitutional rights, and because the City has submitted a
certification of entry of judgment against itself if a finder of
fact or the court on dispositive motion determines that they did
so, resolution of the claims against Defendant Officers will
obviate the need to litigate the *Monell* claims against Municipal
Defendants.  It is also apparent that, at this stage, the *Monell*
discovery will be a significant burden and that avoiding, or at
least delaying, such discovery will serve both convenience and
judicial economy.  Together, this weighs in favor of the
Municipal Defendants' motion to bifurcate and stay discovery on
the *Monell* claims, and is enough for the Court to grant the
motion to bifurcate.

## II.  Potential Prejudice to the Parties

Municipal Defendants and Defendant Officers also contend
that failure to bifurcate the *Monell* issues will seriously
prejudice Defendant Officers.  They argue that extensive evidence
concerning the conduct of non-party officers, the City's non-
implementation of policies and procedures, and broad problems in
hiring, training, and supervising officers is unrelated to
whether the conduct of the Defendant Officers at issue was
objectively reasonable and "will contaminate the jurors' minds"
as to the liability of Defendant Officers. (Def.'s Mot. at 13.)
Although Plaintiffs respond only with two quotations from two
inapposite cases (Pl.'s Resp. at 9), they correctly point out

19

that the Municipal Defendants bear the burden of proving that bifurcation should be granted. The Court finds that the Municipal Defendants have met their burden.

As already noted, the Court has had the opportunity to review pending *Monell* requests in this case. (Def.'s Mot. Ex.s 3, 4, 5.) Plaintiffs seek the broad and extensive evidence that is typical in these cases, including detailed information concerning over eighty excessive force complaints which presumably include non-party officers. If admitted as part of the case against Municipal Defendants, such evidence could prejudice the Defendant Officers' ability to distinguish their own actions from those of other non-party officers. This strongly favors bifurcation of the *Monell* claims, and Plaintiffs have not provided any argument to the contrary.

Plaintiffs argue that there are non-economic interests at stake that can only be served by litigating the *Monell* claims, and that their suit is not merely about money damages. This Court recognizes that a plaintiff may feel a greater sense of personal satisfaction in a verdict that holds a municipality directly liable for the conduct at issue. However, Plaintiffs here seek only money damages, and bifurcation will not impede their ability to recover fully with a proper showing of constitutional injury. Since the City will be paying any compensatory damages, the City may feel an incentive to change.

20

*Parker v. Banner*, 479 F.Supp.2d 827, 829 (N.D. Ill. 2007) ("[I]f damages grow too large, then the city will change its policies, customs, and practices."). Plaintiffs are also reminded that bifurcation is not dismissal. They may choose to pursue the *Monell* claims, if there is anything more to pursue, after the claims against Defendant Officers are resolved. *Elrod v. City of Chicago*, No. 07 C 203, 2007 WL 3241352, at *8. However, where bifurcation strongly serves the interests of convenience and judicial economy or will reduce the risk of unfair prejudice, this Court will grant a defendant's motion to bifurcate. Here, all criteria are met.

### Conclusion

For the reasons explained above, Municipal Defendants' Motion to Bifurcate Plaintiffs' Claims and to Stay Discovery and Trial on the § 1983 Claims Against Them [45] is GRANTED. Discovery and trial on Plaintiffs' *Monell* claims are stayed until the remaining claims in this case have been resolved.

Date:   November 08, 2012       ENTER:

ARLANDER KEYS
United States Magistrate Judge